UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAMIEN PHILLIPS,               :   **CIVIL NO. 4:09-CV-00771**
                               :
          Plaintiff            :   (Judge Caldwell)
                               :
     v.                        :   (Magistrate Judge Smyser)
                               :
RONALD LONG, M.D., MARY LOU    :
SHOWALTER, RN, CCHP,           :
DAVID J. WAKEFIELD, ALAN B.    :
FOGEL and DONNA BEAVEN,        :
                               :
          Defendants           :

## REPORT AND RECOMMENDATION

I.  Background and Procedural History.


     The plaintiff commenced this action in the Court of

Common Pleas of Schuylkill County, Pennsylvania.  By a Notice of

Removal filed on April 23, 2009, defendant Long removed the case

to this court.  On January 25, 2010, the plaintiff filed a second

amended complaint.


     The defendants named in the second amended complaint are:

1) Ronald Long, M.D.; 2) Mary Lou Showalter, the Correctional

Health Care Administrator at the State Correctional Institution

at Huntingdon (SCI-Huntingdon);  3) David J. Wakefield, the

former Superintendent at SCI-Huntingdon; 4) Alan B. Fogel, the

former Director of the Bureau of Health Care Services for the

Pennsylvania Department of Corrections; and 5) Donna Beaven, a

physician's assistant at the State Correctional Institution at

Mahanoy (SCI-Mahanoy).


     The plaintiff alleges that he was denied treatment for an

inguinal hernia.  More specifically, he alleges that defendant

Long denied a request by another doctor that the plaintiff be

seen by a specialist.  He alleges that defendant Showalter denied

his grievance concerning his treatment and that defendants

Wakefield and Fogel denied his grievance appeals.  He alleges

that after he was transferred from SCI-Huntingdon to SCI-Mahanoy,

defendant Beaven denied him treatment for his hernia.  The

plaintiff claims that the defendants were deliberately

indifferent to his serious medical needs in violation of the

Eighth Amendment.  He seeks injunctive relief as well as monetary

damages.

On August 18, 2010, defendants Showalter, Wakefield and Fogel filed an answer to the second amended complaint.  On October 20, 2010, defendant Long filed an answer to the second amended complaint.  By an Order dated March 15, 2011, defendant Beaven was dismissed from this action.

Currently pending is a motion for summary judgment filed by defendants Showalter, Wakefield and Fogel and a motion for summary judgment filed by defendant Long[1].  For the reasons discussed below, we will recommend that the motions for summary judgment be granted and that the case file be closed.

II.   Summary Judgment Standard.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The moving party bears the initial responsibility of

---

1. This motion was actually filed by both defendants Long and Beaven.  However, since defendant Beaven has subsequently been dismissed from this action, we will address the motion only as to defendant Long.

3

informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P. 56(c).

A material factual dispute is a dispute as to a factual issue the determination of which will affect the outcome of the

trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248.  A dispute as to an issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50.  In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter, but is to determine whether there is a genuine issue for trial. *Anderson, supra,* 477 U.S. at 249.  The proper inquiry of the court in connection with a motion for summary judgment "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Summary judgment is warranted, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex, supra*, 477 U.S. at 322. "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297

F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III.  Undisputed Facts.

The following facts are not in dispute for purposes of the pending summary judgment motions.

The Pennsylvania Department of Corrections (DOC) contracted with PHS Correctional Healthcare to supply medical care to inmates within its institutions. *Doc. 83* at ¶15 and *Doc. 91* at ¶15.  PHS Correctional Healthcare employs the doctors and physician's assistants employed in the institutions. *Id.*  The DOC employs the nurses and nurse supervisors. *Id.*  At the times relevant to this case, PHS Correctional Healthcare employed defendant Long as a physician at SCI-Smithfield and as the Regional Medical Director covering both SCI-Smithfield and SCI-Huntingdon. *Doc. 90* at ¶88 and *Doc. 97* at ¶88.

Defendant Showalter is employed by the DOC as the Correctional Health Care Administrator at SCI-Huntingdon. *Doc. 83*

at ¶13 and *Doc. 91* at ¶13.   As Correctional Health Care

Administrator, defendant Showalter's duties include: planning,

organizing directing and managing the health care services

program at SCI-Huntingdon, the coordination of a professional

medical staff in cooperation with a contracted medical vendor and

compliance monitoring and supervision of contracted medical

services. *Id.* at ¶14.  This includes the treatment of inmates

with various types of hernias. *Id.*


       Defendant Fogel was formerly employed by the DOC as the

Director of the Bureau of Health Care Services. *Id.* at ¶30.  He

held the position from July of 2003 until September of 2007. *Id.*

As Director of the Bureau of Health Care Services, defendant

Fogel was responsible for the overall management of the Bureau.

*Id.* at ¶31.  His duties included the following: planning,

organizing training, directing, managing and evaluating health

and psychiatric services; quality improvement services;

monitoring and evaluating medical functions consistent with

standard quality improvement process and risk management; and

reviewing standards and policies in the area of food services.

*Id.*  On occasion, the Secretary's Office of Inmate Grievances and

8

Appeals would forward medical-related inmate grievances to the
Bureau of Health Care Services for review. *Id.* at ¶32.
Defendant Fogel is not a medical doctor or professional. *Id.* at
¶34.

Defendant Wakefield was formerly employed by the DOC as
the Superintendent as SCI-Huntingdon. *Id.* at ¶38.  As the
Superintendent at SCI-Huntingdon, defendant Wakefield was the
administrative head of the institution there. *Id.* at ¶39.  Two
Deputy Superintendents reported to him. *Id.*  In addition,
defendant Wakefield handled appeals by inmates from grievances
pursuant to DC-ADM 804. *Id.*  Defendant Wakefield is not a medical
doctor or medical professional and he has no medical expertise or
training. *Id.* at ¶40.

The plaintiff first noticed a bulge in his groin area in
2004. *Doc. 83* at ¶4 and *Doc. 91* at ¶4.  The plaintiff believes it
came from working out. *Id.*

According to his medical records, the plaintiff was seen
in the medical department on April 3, 2006 with complaints of

9

pain in his left testicle. *Id.* at ¶19.  He denied any dysuria (painful urination). *Id.*  The plaintiff was seen by a physician's assistant who diagnosed him with recurrent epididymitis (inflammation of the epididymis[2]) and prescribed Motrin. *Id.*

On June 6, 2006, the plaintiff was seen by another physician's assistant complaining of inflamation in his testicle. *Id.*  He was again diagnosed with epididymitis and referred to Dr. Araneda. *Id.*  The plaintiff was seen by Dr. Araneda on June 9, 2006 who found that the area was tender on palpation. *Id.*  The doctor noted non-testicular nodules and no evidence of inguinal hernia, and his diagnosis was chronic non-bacterial epididymitis. *Id.*

On November 15, 2006, the plaintiff, still complaining of pain in the epididymis, was seen by Dr. Romeo. *Id.* at ¶20.  Dr. Romeo prescribed Erythromycin, which is an antibiotic, and ordered a culture of the plaintiff's urine. *Id.*  On November 16,

---

2.  The epididymis is "the enlongated cordlike structure along the posterior border of the testis, in the ducts of which the spermatozoa are stored." *Dorland's Illustrated Medical Dictionary* 530 (25th ed. 1974).

2006, the plaintiff had a urine culture which was negative. *Doc. 90* at ¶2 and *Doc. 97* at ¶2.

On November 29, 2006, the plaintiff, complaining of testicular pain, was seen by a physician's assistant. *Doc. 83* at ¶20 and *Doc. 91* at ¶20.  He was told that the urine culture showed no growth. *Id.*  He was diagnosed with a urinary tract infection and was prescribed Bactrim, an antibiotic. *Id.*

The plaintiff was seen again on December 6, 2006 with complaints of left testicular pain. *Id.*  He had no complaints of fever or chills. *Id.*  The diagnosis remained epididymitis. *Id.*

On December 12, 2006, the plaintiff underwent a urinalysis and culture which were negative. *Doc. 90* at ¶4 and *Doc. 97* at ¶4.

On December 20, 2006, the plaintiff complained of testicle pain and swelling in the testicle. *Id.* at ¶6.  He was seen by Dr. Salomon on December 29, 2006. *Doc. 83* at ¶20 and *Doc.*

11

*91* at ¶20.  Dr. Salomon ordered an ultrasound of the plaintiff's left testicle. *Id.* at ¶20.

On February 8, 2007, an ultrasound of the plaintiff's scrotum was performed. *Doc. 90* at ¶8 and *Doc. 97* at ¶8.  The ultrasound was normal. *Id.*

On February 21, 2007, the plaintiff complained of testicle pain, and on March 2, 2007, he asked for the results of the ultrasound. *Id.* at ¶¶ 9 & 10.

On March 7, 2007, Dr. Klemick examined the plaintiff. *Id.* at ¶11.  The plaintiff reported having intermittent pulling pain in his left testicle and into his groin. *Id.*  On examination, Dr. Klemick found no gross pathology or lesion to the groin area. *Doc. 83* at ¶21 and *Doc. 91* at ¶21.  Dr. Klemick thought that the plaintiff had an inguinal sprain/strain or a hernia. *Doc. 90* at ¶12 and *Doc. 97* at ¶12.  The results of the prior ultrasound were not available to Dr. Klemick at that time.  *Doc. 83* at ¶21 and *Doc. 91* at ¶21.

Dr. Klemick saw the plaintiff again on March 12, 2007. *Id.* at ¶22.  The ultrasound report was still unavailable. *Id.*

On March 15, 2007, the plaintiff was seen by a physician's assistant who reviewed the results of the ultrasound with the plaintiff. *Id.*

Dr. Klemick saw the plaintiff again on March 19, 2007. *Id.*  Dr. Klemick examined the plaintiff and could find no mass or hernia. *Doc. 90* at ¶14 and *Doc. 97* at ¶14.  His impression was left inguinal sprain/strain and possible indirect left inguinal hernia. *Doc. 83* at ¶22 and *Doc. 91* at ¶22.  He recommended a surgery consultation with a urologist. *Id.*

All policies and procedures regarding medical care, including outside consultations, are propounded by the DOC. *Doc. 90* at ¶93 and *Doc. 97* at ¶93.  The DOC polices and procedures concerning consultation requests require that the request be reviewed by the Regional Medical Director. *Id.*  The Regional Medial Director makes the final decision whether an outside consultation is warranted. *Doc. 83* at ¶25 and *Doc. 91* at ¶25.

On March 20, 2007, Dr. Klemick completed a Consultation Record form and requested a consultation with a general surgeon because the plaintiff complained of left testicle pain. *Id.* at ¶23 and *Doc. 90* at ¶15 and *Doc. 97* at ¶15.  Defendant Long reviewed that consultation request and indicated that he wanted to know if the hernia was reducible and if it extended into the scrotal sac. *Doc. 90* at ¶16 and *Doc. 97* at ¶16.  Dr. Klemick told defendant Long that the mass was not showing on examination. *Id.* Defendant Long denied the request for a consultation. *Doc. 83* at ¶23 and *Doc. 91* at ¶23.  Defendant Long directed alternative treatment for the plaintiff consisting of being followed every three months onsite. *Doc. 90* at ¶17 and *Doc. 97* at ¶17 and Doc. 93 (Exhibit A) at 1.

Dr. Klemick saw the plaintiff again on March 28, 2007. *Doc. 83* at ¶22 and *Doc. 91* at ¶22.  The plaintiff reported left testicle pain. *Doc. 90* at ¶18 and *Doc. 97* at ¶18.  Dr. Klemick's diagnosis remained inguinal sprain/strain or a hernia. *Id.*  Dr. Klemick gave the plaintiff stretching exercises. *Id.*

14

According to the plaintiff's medical records, on April
18, 2007, Dr. Klemick saw the plaintiff again. *Doc. 83* at ¶24 and
*Doc. 91* at ¶24.  The plaintiff complained of pain in the left
groin area. *Id.*  On examination, no mass or gross pathology to
the genitals was noted. *Id.*  Dr. Klemick's impression was
possible prostatitis (inflammation of the prostate) and probable
indirect left inguinal hernia. *Id.*  Dr. Klemick advised the
plaintiff to check his activities and to do no competitive
activities. *Id.*  He advised the plaintiff, however, that light
workouts were acceptable. *Id.*  He prescribed an antibiotic. *Doc.*
*90* at ¶19 and *Doc. 97* at ¶19.

On May 7, 2007, Dr. Klemick saw the plaintiff again. *Id.*
at ¶20.  The plaintiff reported that stretching helped to remove
the tension feeling he had in his left testicle. *Id.*  Dr. Klemick
felt that the plaintiff had a left inguinal strain and a possible
indirect left inguinal hernia. *Id.*

On July 23, 2007, Dr. Klemick examined the plaintiff
again. *Id.* at ¶22.  His diagnosis remained inguinal sprain/strain
or a hernia. *Id.*  Dr. Klemick told the plaintiff to continue with

15

stretching exercises and with the use of a jock supporter. *Doc. 83* at ¶25 and *Doc. 91* at ¶25.

On July 25, 2007, the plaintiff filed a grievance in which he complained about the treatment of his hernia. *Id.* at ¶26.  Defendant Showalter was assigned to respond to the grievance.  *Id.*  In denying the grievance, defendant Showalter stated in part:

> Dr. Klemick did write a consultation for a specialist to evaluate you and give their opinion on your complaint.  That consult was reviewed by the regional medical director and he denied the request.  At that time there was no indication to see a specialist for your complaint.  When a consult is requested, an alternative treatment plan is initiated to deal with your problem and to follow up on that problem.

*Id.*

The plaintiff subsequently appealed the denial of his grievance to the Superintendent and then to final review. *Id.* at ¶¶ 9 & 11.

On August 21, 2007, the plaintiff was seen by Physician's Assistant Brown. *Id.* at ¶27.  The plaintiff was concerned that he

16

was not being treated for his groin pain. *Id.*  Brown reviewed

with the plaintiff what had been done for him and his past test

results. *Id.*  She explained to the plaintiff that even if his

pain is the result of a hernia without specific symptoms there is

no reason to do further testing because no treatment would be

indicated. *Id.*  Brown also reviewed the plaintiff's alternative

treatment plan and noted that the alternative treatment plan was

a follow up visit in three months. *Id.*  The plaintiff appeared

very appreciative of the discussion and had no further questions.

*Id.*

On August 22, 2007, Dr. Klemick examined the plaintiff

and noted a raisin-sized lump in the left groin-femoral aspect.

*Id.* at ¶28.  The plaintiff denied any fevers, weight loss or

serious infections. *Id.*  Dr. Klemick's impression was "chronic

lymph gland to left groin-femoral aspect." *Id.*  His plan was to

continue to monitor the plaintiff. *Doc. 90* at ¶25 and *Doc. 97* at

¶25.

On October 9, 2007, the plaintiff was transferred to SCI-

Mahanoy. *Id.* at ¶26.

Motrin is available through the commissary. *Id.* at ¶51. The plaintiff, however, does not buy Motrin from the commissary because doctors have told him to only take it periodically because taking too much could damage his liver. *Id.* at ¶58.

After defendant Long denied the request for a consultation, he never heard about the plaintiff again, he did not follow the plaintiff's medical care and treatment and he did not receive any new information about the plaintiff. *Id.* at ¶101. Defendant Long was never informed about the plaintiff's subsequent medical care and treatment nor would he be unless something were specifically brought to his attention as Regional Medical Director. *Id.* at ¶102.  The plaintiff never met defendant Long and never wrote to defendant Long. *Id.* at ¶¶72 & 73. Defendant Long never examined the plaintiff and had no contact with the plaintiff. *Id.* at ¶99.  After the plaintiff's transfer to SCI-Mahanoy, defendant Long was no longer the Regional Medical Director responsible for the care of the plaintiff. *Id.* at ¶105.

No one has ever told the plaintiff that he needs surgery for his hernia. *Id.* at ¶78.

The plaintiff did not write directly to defendant Fogel, the former Director of the Bureau of Health Care Services. *Id.* at ¶11.  He had no direct communications with defendant Fogel. *Id.*

Defendants Wakefield and Fogel were not involved in the decision to deny an outside consultation for the plaintiff's condition. *Id.* at ¶¶35 & 43.

The DOC has set forth guidelines concerning the treatment of hernias. *Id.* at ¶17.  Under the DOC's 13.2.1 (Access to Health Care) Procedures Manual, surgery will not be recommended for all hernias. *Id.*  The Procedures Manual provides: "Because non-reducibility is a major criteria for surgical repair, a palpable mass should be present." *Id.*   If the hernia is not reducible, the inmate is to be referred to a surgeon. *Id.*  A reducible hernia is one which can be restored to its original place by manipulation. *Id.*

IV.  Discussion.

The plaintiff's claims are Eighth Amendment claims.

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). In order for the plaintiff to establish a viable Eighth Amendment medical care claim he must present facts that lead to a reasonable inference that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

The second prong of an Eighth Amendment medical claim is the subjective deliberate indifference prong. "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009). To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Deliberate indifference may be found in a

20

variety of circumstances including where a prison official knows
of a prisoner's need for medical treatment but intentionally
refuses to provide it, delays necessary medical treatment based
on a non-medical reason, denies prescribed or recommended
treatment or persists in a particular course of treatment "'in
the face of resultant pain and risk of permanent injury.'" *Rouse
v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)(quoting *White v.
Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990)).

"It is well-settled that claims of negligence or medical
malpractice, without some more culpable state of mind, do not
constitute 'deliberate indifference.'" *Id.*  "Medical malpractice
does not become a constitutional violation merely because the
victim is a prisoner." *Estelle, supra,* 429 U.S. at 106.  "While
the distinction between deliberate indifference and malpractice
can be subtle, it is well established that as long as a physician
exercises professional judgment his behavior will not violate a
prisoner's constitutional rights." *Brown v. Borough of
Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Prison medical authorities are given considerable
latitude in the diagnosis and treatment of medical problems of

inmates.  Courts will "disavow any attempt to second guess the
propriety or adequacy of a particular course of treatment . . .
which remains a question of sound professional judgment." *Little
v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting
*Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d
Cir. 1979)).  Mere disagreement as to the proper medical
treatment does not support an Eighth Amendment claim. *Monmouth
County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d
326, 346 (3d Cir. 1987)("Courts, determining what constitutes
deliberate indifference, have consistently held that mere
allegations of malpractice do not raise issues of constitutional
import. . . . Nor does mere disagreement as to the proper medical
treatment support a claim of an eighth amendment violation.");
*White*, *supra,* 897 F.2d at 110 (mere disagreement over proper
treatment does not state a claim upon which relief can be
granted).


   A. <u>Defendant Long</u>


       Defendant Long contends that he is entitled to summary
judgment because the plaintiff does not have evidence from which
a reasonable trier of fact could conclude that he was

deliberately indifferent to the plaintiff's medical needs.  We
agree.

Defendant Long asserts in his declaration that he
reviewed Dr. Klemick's request for a consultation and believed
that a consultation with a surgeon was not medically necessary
given the medical information provided to him. *Doc. 89-6* at 2 at
¶8.  He asserts that if a hernia is easily reducible then a
patient is not a candidate for surgery. *Id.* at ¶10.  He asserts
that he was provided information that the plaintiff's suspected
hernia was reducible and that there was no strangulation noted.
*Id.* at ¶20.  He asserts that, therefore, there was no medical
reason for the requested referral. *Id.* at ¶10.  Defendant Long
asserts that at no time did he believe that the medical treatment
that was being provided to the plaintiff presented a substantial
risk of harm to him and that he believed that the medical care
provided to the plaintiff was reasonable, appropriate and
beneficial. *Id.* at ¶24.  He also asserts that at no time has the
cost of any treatment been a factor in his determination as to
the course of care and treatment provided to the plaintiff. *Id.*
at ¶25.

Defendant Long's declaration indicates that he exercised his professional medical judgment in denying the consultation request.  "[T]he exercise by a doctor of his professional judgment is never deliberate indifference." *Grindraw v. Dendler,* 967 F.Supp. 833, 836 (E.D.Pa. 1997).

The plaintiff has not presented evidence from which a reasonable trier of fact could conclude that defendant Long did not exercise his professional judgment or could conclude that defendant Long knew of a substantial risk of serious harm to the plaintiff.  The plaintiff does assert that defendant Long considered non-medical factors when making his decision.  As support for that assertion the plaintiff cites the consultation form on which is written in the lower right hand corner "Life." *Doc. 98* at 16.  The plaintiff asserts that that notation indicates that defendant Long considered that the plaintiff is serving a life sentence in making his decision.  However, that notation does not provide a reasonable basis for a trier of fact to infer that defendant Long did not exercise his professional judgement or that he was indifferent to the plaintiff's medical needs.

The plaintiff contends that defendant Long was deliberately indifferent because his alternative treatment plan did not mention any treatment for the plaintiff's pain. Defendant Long's alternative treatment plan was for the plaintiff to be followed every three months onsite.  There is no evidence in the record to support an inference that defendant Long had any reason to believe that the medical professionals who actually examined the plaintiff could or would not address his pain.

Because the plaintiff has not presented evidence from which a reasonable trier of fact could conclude that defendant Long was deliberately indifferent to the plaintiff's medical needs, defendant Long is entitled to summary judgment[3].

B. Defendants Showalter, Wakefield and Fogel.

Defendants Showalter, Wakefield and Fogel contend that they are entitled to summary judgment because the plaintiff has

---

[3]. Since we conclude that defendant Long is entitled to summary judgment because the plaintiff has failed to present evidence from which a reasonable trier of fact could conclude that defendant Long was deliberately indifferent to the plaintiff's medical needs, we need not address defendant Long's other argument, i.e. that the plaintiff has not presented evidence of causation, in support of his motion for summary judgment.

not presented evidence from which a reasonable trier of fact could conclude that they were deliberately indifferent to the plaintiff's medical needs.  We agree.

A prison official is not deliberately indifferent simply because he or she failed to respond to a prisoner's medical complaints when the prisoner was already being treated by a prison doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).  "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

The undisputed facts indicate that the plaintiff was seen numerous times by medical professionals both before and after defendant Long denied the consultation request.  Nevertheless, the plaintiff asserts that defendant Showalter failed to ensure that defendant Long's alternative treatment plan was carried out.  However, the undisputed facts indicate that after defendant Long denied the consultation request and directed that the plaintiff

be followed every three months on site the plaintiff was seen by

Dr. Klemick more frequently than every three months prior to his

transfer.  The plaintiff was seen by Dr. Klemick on March 28,

2007, April 18, 2007, May 7, 2007, July 23, 2007 and August 22,

2007.

Although the plaintiff disagrees that his complaints were

being treated appropriately, he has not presented evidence from

which a reasonable trier of fact could conclude that defendants

Showalter, Wakefield and Fogel had a basis not to reasonably rely

on the medical professionals who were treating the plaintiff or

that they knew of a substantial risk of serious harm to the

plaintiff.  Thus, the plaintiff has not presented evidence from

which a reasonable trier of fact could conclude that defendants

Showalter, Wakefield and Fogel were deliberately indifferent to

the plaintiff's medical needs,  Accordingly, defendants

Showalter, Wakefield and Fogel are entitled to summary judgment.[4]

---

4.  Since we conclude that defendants Showalter, Wakefield and
Fogel are entitled to summary judgment because the plaintiff has
failed to present evidence from which a reasonable trier of fact
could conclude that they were deliberately indifferent to the
plaintiff's medical needs, we need not address their other
arguments, including defendants Wakefield and Fogel's argument
based on lack of personal involvement, in support of their motion
for summary judgment.

V. Recommendations.


      Based on the foregoing, it is recommended that the motions (docs. 82 & 87) for summary judgment filed by defendants Showalter, Wakefield, Fogel and Long be granted, that summary judgment be entered in favor of defendants Showalter, Wakefield, Fogel and Long and that case file be closed.



                              ***/s/ J. Andrew Smyser***
                              J. Andrew Smyser
                              Magistrate Judge


Dated:  March 29, 2011.